## Ross, Executor, et al. *v.* Watkins.

[No. 11,645.   Filed November 20, 1923.]

1. **Gifts.**—*Inter Vivos.—Consideration Unnecessary.*—No consideration is necessary for a gift *inter vivos.*   p. 493.

2. **Gifts.**—*Inter Vivos.—Delivery Necessary.*—To constitute a gift *inter vivos,* it is essential that the article given should be delivered absolutely and unconditionally; it is not necessary that there should be a manual delivery of the thing given; it is sufficient if the delivery be as complete as the thing and the circumstances of the parties will permit; such delivery may be either actual, constructive or symbolical, dependent on the subject-matter.   p. 493.

3. **Gifts.**—*Inter Vivos.—Deferment of Enjoyment until Donor's Death.—Validity.*—The fact that the enjoyment of a gift is deferred until the donor's death, or that the earnings of the property given are reserved to the donor during his lifetime will not defeat a gift otherwise valid.   p. 495.

4. **Gifts.**—*Inter Vivos.—Delivery when Property Held in Trust.*—Personal delivery by the donor is not always necessary; when another person is the custodian, an order of the donor to deliver to the donee may be sufficient; it is a question of intent, and the inquiry is as to what was intended by that which was done.   p. 497.

5. **Gifts.**—*Inter Vivos.—Property Held in Trust.—Revocation by Death of Donor.*—An unexecuted gift is revocable by the death of the donor, and a mere agent of the donor, holding the naked possession only to execute the directions of the donor, cannot defeat such revocation by delivery of the property after the donor's death.   p. 497.

6. GIFTS.—*Inter Vivos.*—*Constructive Delivery by Donor.*—*Sufficiency.*—Where the owner of a bond which was in the hands of a trust company for the collection of interest thereon, assigned all his interest therein to his daughter, reserving the interest payable on the bond during his lifetime, and directed the trust company to deliver the bond to the assignee, the assignee accepted the assignment and presented it to the trust company which indorsed the assignment on the bond, *held* a sufficient delivery to constitute a valid gift *inter vivos.* p. 498.

7. GIFTS.—*Inter Vivos.*—*Change of Status of Property.*—The fact that after the constructive delivery to the donee of a bond which was in the hands of a third party for the collection of interest thereon, a part of the bond was paid to such third party and a new bond was executed for the remainder does not affect the gift, the money and the new bond being impressed with the same trust. p. 498.

From the Tippecanoe Circuit Court; *Homer W. Hennegar*, Judge.

Action by Johanna Watkins against Joseph B. Ross, as executor of the will of Alfred Anderson, and others. From a judgment for the plaintiff, the defendants appeal. *Affirmed.*

*Joseph B. Ross* and *Stuart, Simms & Stuart,* for appellants.

*Clyde H. Jones* and *Ralston, Gates, Lairy, VanNuys & Barnard,* for appellee.

McMAHAN, C. J.—Complaint by appellee against the LaFayette Loan and Trust Company and appellant Joseph B. Ross as executor of the last will and testament of Alfred Anderson asking that she be declared the owner of a certain mortgage bond for $3,000 held by said trust company, and of $1,000 which was paid to said trust company; that the trust company be required to assign and deliver said bond and pay the $1,000 to appellee and for judgment against the trust company for interest collected on such bond. Appellant Mary Anderson, widow of Alfred Anderson, on her application

was made a defendant and filed an answer in which she claimed the bond and money mentioned in the complaint was the property of Alfred Anderson at the time of his death and that under the will of her husband she was given a one-half interest in the bond and money. The trust company filed an answer: (1) In denial and (2) admitting that it held the bond as trustee; that as trustee it collected the $1,000; that it had paid such money to Ross as executor and that it was ready and willing to deliver the bond to whomsoever the court on final hearing should direct. The executor filed an answer and also a cross-complaint against the trust company, Mrs. Anderson and appellee in which he alleged that the $1,000 and the $3,000 bond belonged to Mr. Anderson at the time of his death and asking that the trust company be required to assign and deliver the bond and mortgage to him as executor and that the title to said bond be quieted in him. The facts were found specially with conclusions of law and judgment in favor of appellee. Ross, executor and Mrs. Anderson appeal and have properly challenged the correctness of the several conclusions of law.

The facts as found by the court are in substance as follows:

On March 3, 1917, and prior thereto, The Lafayette Loan and Trust Company was the owner and in possession of a mortgage bond for $4,000, executed to it by John F. Snouwaert. This bond was dated March 8, 1911, and had been renewed to March 8, 1921, and drew six per cent. interest from date, payable semiannually. To secure the payment of said bond Snouwaert executed a mortgage on certain real estate in Fountain county, Indiana, to said trust company. This mortgage was duly recorded, and on March 3, 1917, the trust company sold said mortgage bond to Alfred Anderson. The parties at the time of such sale exe-

cuted in duplicate an instrument in writing reciting the terms and conditions of such sale; that Anderson had left the bond with the trust company for collection with the understanding that the principal should be paid over to him as collected and that as much of the interest as equaled five per cent. per annum should be paid over to him as paid in, he to receive his first interest payment of $100 September 8, 1917, and a like amount on March 8, and September 8, each year thereafter.

One of said duplicates was delivered to Mr. Anderson and the other retained by the trust company. No assignment of said mortgage and bond to Anderson was made other than as above stated. The trust company thereafter paid Anderson from time to time 5 per cent. interest on said bond as the same accrued according to said instrument of March 3, 1917. September 14, 1918, Anderson caused to be drawn up and signed by himself an instrument reading as follows:

"In consideration of natural love and affection and in consideration of valuable services (without compensation) rendered to me and her deceased mother, I hereby assign, transfer and deliver to my daughter, Johanna L. Watkins, all my right, title and interest in and to a certain mortgage bond of $4,000, dated March 8, 1911, executed by John F. Snouwaert and secured on land in Fountain County, Indiana, and recorded in last said County in Book of Mortgages No. 47, page 429 and which mortgage bond and security is held by the Lafayette Loan & Trust Company of Lafayette, Indiana as Trustees for me: provided however, that as long as I live I reserve and shall receive the five (5) per cent. interest on said bond from said Trust Company. And the said Trust Company is hereby authorized, directed and empowered to transfer the said security to my said daughter and account to her therefor only to the reservation aforesaid.

Witness my hand and seal this 14th day of September 1918."

In May, 1919, Anderson delivered this instrument to appellee who accepted it and caused it to be presented to the president of the trust company, and such president, endorsed on the top of the duplicate of the instrument of March 3, 1917, held by the trust company, the following statement:

"The mortgage described below was assigned to Johanna L. Watkins, by separate paper, and witnessed by J. W. Wilstach, September 14, 1918, he, Alfred Anderson reserving the 5 per cent. income therefrom as long as he lives." This endorsement was placed on said duplicate previous to the death of Alfred Anderson, and previous to the payment of any sum on said mortgage by Snouwaert. March 7, 1921, said mortgage and bond were still in the possession of said trust company, as trustee, and being due by its terms as extended, Snouwaert paid to the trust company as trustee, $1,000 on said mortgage and executed a new bond in the sum of $3,000 payable to said trust company, as trustee, and to secure the payment of said $3,000 executed his mortgage on the real estate described in the first mortgage. This new mortgage was duly recorded and is held by the trust company as trustee. The consideration for the payment of $1,000 and the execution of the $3,000 mortgage was the satisfaction and release of the $4,000 mortgage.

The trust company upon the receipt of the $1,000 retained the same and upon its record showed it was held for investment, and it was holding said $1,000 in such manner when Alfred Anderson died. The trust company on the acceptance of the $3,000 mortgage did not issue to Alfred Anderson or Johanna Watkins or to any other person any further certificate, or instrument in reference to the same, but held the $1,000 and the $3,000 mortgage believing it had the right to hold the same under the terms of the contract originally made

with Alfred Anderson, as affected by the instrument executed by Anderson to appellee and dated September 14, 1918.

Alfred Anderson died testate June 27, 1921. Appellant Joseph Ross was appointed executor of his will, and after his appointment he procured an employe of the trust company to transfer to him as such executor, the $1,000 so paid by Snouwaert on said mortgage, such transfer being made July 5, 1921. When the officers of the trust company learned of such transfer they informed appellant Ross that the clerk in making the same had made a mistake and asked him to return the money to the trust company, which he refused to do, but he agreed that he would hold the funds intact until the respective claims of the parties to such funds were determined, and would return said $1,000 if it should afterward be adjudged that he was not entitled to it as executor, and he is now holding said $1,000 under such arrangement. He requested the officers of said trust company to deliver and assign to him the $3,000 note and mortgage, but they refused to do so.

After the death of Alfred Anderson, appellee being in possession of such instrument dated September 14, 1918, caused the same to be presented to the officers of said trust company and demanded that it pay said $1,000 to her and assign to her the $3,000 note and mortgage so held by the trust company which demand was refused and the trust company now holds said $3,000 bond subject to the order of the court.

The trust company collected interest on the funds so held by it in the sum of $150 and on the date of the death of Alfred Anderson interest amounting to $45.83 was due on such bond. Said trust company after May 3, 1917, was holding said bond and mortgage as trustee for said Alfred Anderson, but that the said assignment by Alfred Anderson of September 14, 1918, gave

appellees the vested ownership of the principal of said bond, and the security therefor subject to the right of Anderson to have the five per cent. interest on said principal during his life. It is also found that the trust company at the time when Mr. Anderson died was holding the proceeds of said original mortgage as trustee for appellee.

The court concluded as a matter of law: That appellee was the owner of the $3,000 note and mortgage and entitled to have them transferred to her by proper assignment; that she was the owner of the $1,000 paid to the trust company and entitled to judgment for such sum; that the estate of Alfred Anderson was entitled to judgment for the interest on the $3,000 mortgage from March 8, 1921, to June 27, 1921, amounting to $45.83, and appellee was entitled to judgment for the interest on said mortgage from June 27, and that neither of the appellants had any interest in the $1,000 paid to said trust company or the $3,000 mortgage held by the trust company as trustee.

Judgment having been entered in accordance with the conclusions of law appellants appeal.

Appellants' first contention is that the instrument of September 14, 1918, whereby Mr. Anderson assigned the $4,000 bond to appellee cannot be sustained

1. and held to be a valid assignment because it is not supported by a valid consideration. Having reached the conclusion that the facts found are sufficient to and do as a matter of fact show a gift *inter vivos* to appellee, it is not necessary to pass upon any other question, as no consideration is necessary to support a gift.

Appellants contend there was no gift *inter vivos* because it was conditional and because there was

2. no delivery of the bond to appellee. When the $4,000 bond and mortgage securing it were

assigned to Mr. Anderson by the trust company, it was agreed that the bond was to be left with the trust company for collection; that the principal when paid should be paid over to him; that as the interest was paid as much thereof as equaled five per cent. per annum on the bond should be paid to Mr. Anderson.

What if any interest the trust company had in said bond by reason of its retaining the one per cent. interest on the bond is not involved in this appeal, although it appears to have had such an interest therein as authorized it to retain part of the interest when collected. Appellants concede that the trust company continued to hold this $4,000 bond and retained it in its possession for the purpose of collection. Under the facts it is quite clear that the trust company was the trustee of Mr. Anderson for the purpose of holding such bond and collecting both interest and principal. Mr. Anderson never had possession of such bond other than the constructive possession which followed the assignment to him and the retention thereof by the trust company. While this bond was in the actual possession of the trust company and before any part of the principal had been paid, Mr. Anderson signed and delivered to appellee the instrument dated September 14, 1918, whereby he assigned and transferred all of his interest in said bond to appellee with the reservation that as long as he lived he should receive the five per cent. interest from the trust company and which written assignment directed the trust company to assign and transfer such bond to appellee subject to such reservation. Following the delivery of this instrument to appellee and her acceptance thereof, she presented it to the trust company and the president of the trust company thereupon made an endorsement on the instrument of March 3, 1917, held by it to the effect that the mortgage therein described had been assigned to appel-

lee, subject to the payment of the five per cent. interest to Mr. Anderson.

As was said by the court in *Smith,. Admr.,* v. *Dorsey* (1872), 38 Ind. 451, 10 Am. Rep. 118: "To constitute a valid gift *inter vivos* it is essential that the article given should be delivered absolutely and unconditionally. The gift must take effect at once and completely, and when it is made perfect and complete by delivery and acceptance, it then becomes irrevocable by the donor."

But it is not necessary that there should be a manual delivery of the thing given. It will be sufficient if the delivery be as complete as the thing and the circumstances of the parties will permit. *The Gammon Theological Seminary* v. *Robbins* (1891), 128 Ind. 85, 27 N. E. 341, 12 L. R. A. 506..

Where there is a purpose on the part of the donor to make a gift of the thing and it is delivered and accepted by the proposed donee, the gift is irrevocable.

And such delivery may be either actual, constructive or symbolical, dependent on the subject matter. *Richards* v. *Wilson* (1916), 185 Ind. 335, 383, 112 N. E. 780.

The fact that the enjoyment of a gift is deferred until the donor's death, or that the earnings of the property given are reserved to the donor during his lifetime, will not defeat a gift otherwise valid. *Grant Trust, etc., Co.* v. *Tucker* (1911), 49 Ind. App. 345, 96 N. E. 487. In the instant case the original bond for $4,000 drew interest at the rate of six per cent. and was the property of the trust company. It sold and assigned the principal of the bond to Mr. Anderson impliedly reserving to itself one per cent. interest. Interest at the rate of five per cent. when collected was to be paid to Mr. Anderson. The actual possession of the bond remained with the trust company. Mr. Anderson recognized the trust company as

being a trustee in the matter and the court found as a matter of fact that it originally held possession of such bond as a trustee, and that after the assignment of the bond to appellee the trust company held possession of such bond as trustee for her, and that it held possession of the $3,000 bond and the $1,000 as trustee for her. As was said by the court in *Grant Trust, etc., Co.* v. *Tucker, supra,* "If the property remained under the control of the donor, though in the keeping of the bank, and the bank was subject to his further direction as to its final disposition, then its relation was that of an agent. If, however, the bonds were delivered to the bank by the donor, with the intention that the present title and ownership should pass. to the donee, subject only to the donor's right to the accruing interest thereon during his lifetime, and such intention was carried into effect by the language employed and the things done in relation thereto, then the gift was executed, and the bank became and was a trustee for the donee."

Appellants in support of their contention that there was no delivery of the bond, cite *Smith, Admr.,* v. *Dorsey, supra; Gammon Theological Seminary* v. *Robbins, supra; Crawfordsville Trust Co.* v. *Ramsey* (1913), 55 Ind. App. 40, 100 N. E. 1049, 102 N. E. 282; and *Hayes* v. *McKinney* (1920), 73 Ind. App. 105, 126 N. E. 497, as being controlling. Without entering into a discussion of the facts in those cases, they are easily distinguished from the case now under consideration. In each of the cases cited, the court held there was no gift because of the absence of a delivery.

In *Wyble* v. *McPheters* (1875), 52 Ind. 593, where a person delivered certain bonds and money to another with directions to give to certain children of the former upon his death, and the person to whom the bonds and money were so delivered received them and agreed to execute the trust, it was held there was a sufficient deliv-

ery to constitute a gift *inter vivos*. The person to whom the bonds and money were delivered became a trustee for the children of the donor, and as said by the court: "A delivery to a trustee for the use of the party to be benefited is as effectual as a delivery to the party himself."

In *Pyle* v. *East* (1915), 173 Iowa 165, 155 N. W. 283, 3 A. L. R. 885, it was held that the endorsement by payee upon a note taken for the purchase price of land of a statement that the note is to become the property of the maker at the payee's death, and its delivery to a third person to collect the interest during the lifetime of and turn it over to the payee, and at his death to deliver the note to the maker, constituted a gift. See, also, *Innes* v. *Potter* (1915), 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896, and note page 902.

While there must be a delivery by the donor to constitute a gift, actual and personal delivery by the donor is not always necessary; for when another person is the custodian, an order of the donor to deliver to the donee may constitute a gift. It is a question of intent, and the inquiry is as to what was intended by that which was said and done. *McKenzie* v. *Harrison* (1890), 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. 638.

It is the law that an unexecuted gift is revocable by the death of the donor, and that a mere agent of the donor, holding the naked possession, only to execute the directions of the donor cannot defeat such revocation by delivery of the property after the death of the donor. But as was said in *Martin* v. *McCullough, Admr.* (1893), 136 Ind. 331, 34 N. E. 819, where one clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes

such a delivery to a third person for the use of the intended donee, as he is then capable of making, considering the character and situation of the property, the person to whom delivery is thus made will be presumed, in the absence of countervailing circumstances to take the property as trustee of the intended donee, and not merely as agent of the donor.

The intention of a donor "when clearly ascertained and fairly consummated, within the meaning of well established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires a delivery of the subject of the gift is not to be enforced arbitrarily." *Devol* v. *Dye* (1890), 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439. In *Robertson* v. *Robertson* (1905), 147 Ala. 311, 40 So. 104, 3 L. R. A. (N. S.) 774, 10 Ann. Cas. 1051, the owner of certain bonds executed an instrument expressing his desire to give the same to his sisters, reserving to himself the right to receive the interest during his lifetime. The bonds were delivered to a brother with directions to hold them as trustee for the sisters, and to pay the interest to the donor. The transaction was held to be a gift.

Mr. Anderson in the instrument whereby he assigned the bond to appellee, expressed his intention to then and thereby assign and in so far as was in his 6, 7. power, transfer and deliver the bond to appellee.

And under the authorities heretofore cited, we hold there was a sufficient delivery to constitute a gift *inter vivos*. The fact that $1,000 was paid on the $4,000 bond and a new bond for $3,000 executed does not change the situation. The $1,000 paid to the trust company and the $3,000 mortgage and bond became impressed with the same trust as did the original $4,000 bond.

In further support of the conclusion which we have reached, we cite, *Caylor* v. *Caylor* (1899), 22 Ind. App. 666, 52 N. E. 465, 72 Am. St. 331; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 62 N. E. 1028; *Teague* v. *Abbot* (1912), 51 Ind. App. 604, 100 N. E. 27.

Judgment affirmed.