M. LEVI v. R. MARSHA.

(Decided April 12, 1898.)

*Action on Contract—Married Woman—Alien Husband.*

A married woman, whose husband is an alien and never visited or resided in the United States, is personally liable on her contracts.

CIVIL ACTION tried before *Starbuck, J.*, at December Term, 1897, of FORSYTH Superior Court on appeal from a Justice of the Peace.

The parties agreed upon the following as the facts in the case and submitted the same to the Court for judgment thereupon:

"That on December 1st, 1896, the Defendant borrowed from the plaintiff, the sum of fifty dollars, and promised to pay the same on demand. That demand was duly made, and that no part of said sum has been paid.

"That defendant was, and is a married woman, and came to North Carolina from her native home in Assyria 7 years ago, and has never become a naturalized citizen of the United States.

"That her husband is an alien and has always lived in Assyria.

"That defendant has received letters from her husband in which he expressed the intention of coming to this country to live at some indefinite time in the future."

Upon the foregoing facts, the Court, being of the opinion that defendant had capacity to contract as a *feme sole*, rendered judgment for the plaintiff and defendant appealed.

*Mr. L. M. Swink* for plaintiff.

*Messrs. Watson, Buxton & Watson,* for defendant, (appellant).

FAIRCLOTH, C. J.:   It is admitted that the defendant is a married woman and that her husband, who has never been in the United States, either as a resident or visitor, resides in Syria, Turkey, and that neither has ever been naturalized; that the defendant contracted with and became indebted to the plaintiff to the amount claimed by the plaintiff, and the sole question is whether she is liable on her personal contract.   The only defence relied upon is her coverture.

This question has not heretofore been presented to this Court.   We must answer it upon such authorities as we find and upon the reason, principle and policy of the admitted facts.   At common law a married woman could not make a binding personal contract, nor can she do so under our Constitution and Statutes, except in certain cases, and this case does not fall within those exceptions.   *The Code*, sections 1825, 1326 and 1832,

by their express terms, do not apply. There is nothing very anomalous in a married woman being allowed the capacity of a *feme sole*, under special circumstances. Her disability to contract, to sue and be sued is not like that of a child or lunatic, arising from the presumed want of judgment, or discretion. It arises from the nature of the marriage relation. It is intended to secure the husband's right to the person and society of his wife, and to protect the wife against any misuse of the power entrusted to the husband by the marital rela-, inasmuch as he is primarily liable for her support maintenance and for certain of her acts and conacts.

There are, however, some exceptions to the general rule declaring her incapacity. These exceptions are from necessity, and require, in order that natural justice may be done, the protection of those with whom she may contract.

In *Troughton* v. *Hill*, 2 Haywood 614, the plaintiff's husband was called upon to take the oath of allegiance or incur the penalty of the crime of high treason if he returned. He left the State and in 1793 she sued defendant for her money and property in his hands, and it was held that she might sue and be sued, acquire and transfer property and that she was for all purposes a *feme sole* except marriage. It was considered that, if the husband was banished or had abjured the realm, or if the husband be an *alien residing abroad*, the wife had the rights of a *feme sole*. Co. Litt. 133a. "If the husband be an alien always living abroad, the reason of the exception also applies" and it was held that the wife could sue as a *feme sole* in like manner as if the husband had abjured the realm. *Deerly* v. *Duchess of Mazarine*, 1 Lord Raymon, 147. In *Walford* v. *Duchess of Pieme*,

2 Esp., 544, it was held that the wife was liable as a *feme sole* for goods sold, when the husband was a foreigner residing abroad, and that the case was similar to that of a husband abjuring the realm, and it was reasonable; that otherwise she would be without credit and might starve. The same reasoning and conclusion were adopted in *Gaillon* v. *L. Aigle*, 1 Bos. and P. 357 and in *Gregory* v. *Paul*, 15 Mass., 31.

In *Robinson* v. *Reynolds*, 1 Aikens, 174, it was held that "she may however, sue or be sued alone, when the husband is, in law, *civilter mortuus*, or is an alien who has never resided in this government, or where he is exiled or banished for life or has abjured the realm." Similar conclusions are found in *Bean* v. *Morgan*, 4 McCord, 148; *Gregory* v. *Pierce*, 4 Met., 478. Chancellor Kent finally remarks: "It is probable that the distinction between husbands who are aliens and who are not aliens cannot long be maintained in practice, because there is no solid foundation in principle for the distinction." 2 Kent. Com., 157.

As the wife's incapacity is not due to a natural cause, but is imposed by a rule of public policy, it ceases with the reason on which it is placed, and she is then like any other competent person, capable of transacting business.

For these reasons and authorities we find no error in the record.

Affirmed.