HELEN URBAN LAMBETH v. J. WALTER LAMBETH.

(Filed 14 January, 1959.)

**1. Divorce and Alimony § 21—**
     In the wife's action for alimony without divorce, a receiver appointed therein to take possession of the husband's property within the State may collect the income from the husband's realty for the purpose of paying alimony awarded the wife in the action and may sell the husband's real estate if necessary to pay the alimony decreed. G.S. 50-16.

**2. Courts § 3—**
     The Superior Court, in its general equitable jurisdiction has inherent power over property in *custodia legis* and may order the sale of such property when necessary for the proper protection of the interests involved.

**3. Receivers § 1—**
     Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require.

**4. Divorce and Alimony § 21:    Receivers § 4—**
     A court of equity has the power to order the receiver of the husband's

realty, appointed to enforce the payment of alimony decreed, to sell certain non-income producing realty for the purpose of investing the proceeds in accordance with G.S. Chapter 53, Article 6, so as to produce an income sufficient to enable the receiver to pay the expenses of the receivership and the alimony awarded.

**5. Divorce and Alimony § 21:    Judgments § 19—**

Order for the sale of realty to produce income for the payment of alimony decreed by the court should be entered at term and not in chambers if the defendant husband is not given notice thereof.

**6. Divorce and Alimony § 21—**

Where non-income producing realty of the husband is ordered sold and the proceeds invested in order to provide income for the payment of alimony decreed, the proceeds of such sale are subject to the doctrine of equitable conversion and retain their character as realty.

APPEAL by plaintiff from *Preyer, J.,* 2 June Civil Term, 1958, of DAVIDSON.

This action was instituted in the Superior Court of Davidson County on 17 December 1957 for alimony without divorce, alimony *pendente lite,* suit money, counsel fees, and custody of child. Ancillary to the principal action, complaint prayed an attachment of the defendant's real property in Davidson County and the appointment of a Receiver therefor.

The plaintiff and the defendant were married on 29 May 1949 in Dade County, Florida. One child, Diane Lambeth, was born of the marriage on 13 February 1954.

From the facts found by the court below, it appears that on 27 July 1957 the defendant abandoned his wife and minor daughter, failing to provide them with the necessary subsistence according to his means and station in life. Thereafter, in August 1957, the defendant left the State of North Carolina carrying with him large quantities of stocks, bonds, and other intangible securities, having a value in excess of $750,000, the income from which is being received by him. The defendant's net worth in February 1958 was approximately $1,800,000, and his average adjusted gross income for the years 1950 through 1956 was $50,529.17 per year. In addition to the improved real estate in Thomasville, which yields gross rentals of $1,035.54 per month, the defendant owns three tracts of farm land in North Carolina, containing a total of 1,686.47 acres and having a value of not less than $400,000.

The defendant was duly served by publication, his properties in Davidson County attached and levied upon on 17 December 1957, and on 3 January 1958 a Receiver was appointed and directed to take possession of all the defendant's properties, both real and per-

sonal, tangible and intangible, located in the State of North Carolina. On the same date the custody, care and tuition of Diane Lambeth, the minor child of the plaintiff and defendant, was granted and conferred upon the plaintiff *pendente lite,* and the defendant was directed to pay the plaintiff the sum of $7,800 to enable her to repay sums she had borrowed and expended for necessary living expenses since 27 July 1957. The defendant was likewise ordered to pay $2,000 per month alimony *pendente lite.* The possession of the homeplace of the defendant in Thomasville, located at 19 East Main Street, was allocated to the plaintiff for occupancy by her and the minor child of the parties as their home *pendente lite.* Suit money and attorneys fees *pendente lite* were also awarded to the plaintiff and her attorneys. Various other orders were entered from time to time pending the hearing of this cause on its merits, the contents of which are not essential to the disposition of this appeal.

This cause came on for hearing on its merits at the March Civil Term 1958 of Davidson County. The jury answered each of the issues submitted in favor of the plaintiff and the court entered judgment in accord with the verdict on 9 April 1958 in which the custody of the minor child of the parties was awarded to the plaintiff, permanent alimony for the support of the plaintiff and her minor child in the sum of $1,600 per month, and attorneys fees. The plaintiff was likewise allotted, pending further orders of the court, the use and possession of the homeplace referred to hereinabove, together with the furnishings therein, as a home for the plaintiff and the aforesaid minor child.

In June 1958 the plaintiff petitioned the court to direct the Receiver to sell the defendant's farm properties and invest the proceeds therefrom in such legal investments as are permitted by Article 6 of Chapter 53 of the General Statutes of North Carolina, and, in turn, use the income from such investments for the purpose of paying alimony to the plaintiff, defraying the expenses of the receivership, and such other payments as the Receiver should be authorized to make.

This cause came on for hearing before his Honor upon the verified petition of the plaintiff, and being heard and the court having considered the pleadings, the petition, and the several reports of Hubert E. Olive, Jr., Receiver heretofore appointed in this cause, found as a fact that the allegations of the petition are true. The court made additional findings of fact and conclusions of law, the essential parts of which are stated below:

1. That it is for the best interest of both the plaintiff and the defendant and the minor child of the parties that the corpus of the defendant's estate located in North Carolina, which is in the possession

and control of said Receiver, should be, so far as possible, preserved unimpaired, but that the income which can be obtained therefrom is and will continue to be insufficient to enable the Receiver to pay the expenses of the receivership, expenses of upkeep and maintenance of the properties in the possession of the Receiver, *ad valorem* city and county taxes, insurance premiums upon the improved property, taxes and insurance premiums upon the homeplace, the alimony payments which the plaintiff is entitled to receive under the judgment heretofore entered, and Federal and State fiduciary income taxes;

2. That the Receiver has no other personal property of the defendant of any appreciable value which could be sold for the purpose of raising funds to meet the obligations enumerated hereinabove;

3. That the properties known as the "Gray Farm," "Cedar Lodge Farm," and "Silver Valley Mining Tract," do not produce any appreciable income and that it would be financially hazardous, impractical and uneconomical for the Receiver to attempt to operate said farm properties; that if rented to tenants the income therefrom would be trivial in comparison with the income which would be obtained by investment of the proceeds of the sale of said properties, and the rental of said properties would tend to depreciate them in value; that in any event it would be impossible to derive sufficient income from any use of said properties, when added to the other income of the Receiver, to enable the Receiver to pay said taxes, expenses and alimony installments;

4. That the properties described in paragraph 5 of said petition (being the farms designated by name in the preceding paragraph) will yield at a sale thereof net proceeds of not less than $400,000, and that such net proceeds invested in such legal investments as are permitted by Article 6 of Chapter 53 of the General Statutes of North Carolina (together with the interest income from any deferred portion of such sales price secured by first lien purchase money deeds of trust), will, when added to the rental income which the Receiver is collecting from the improved business properties now in the possession of tenants who are paying the rents to the Receiver, provide the Receiver with sufficient income so as to enable him to meet the obligations heretofore enumerated;

5. That the Receiver does not have on hand sufficient funds to pay the claims which have been filed with him and to meet the other legal obligations of the receivership and will not have sufficient funds to do so unless the farm lands referred to herein are sold and the proceeds invested in legal investments, and unless the properties are sold and the proceeds so invested it will become necessary for the corpus of the defendant's estate to be depleted and invaded by sales of por-

tions of his real property from time to time in order to raise the funds which the Receiver must have to pay the aforesaid obligations.

6. The court further found that the farm properties described in paragraph 5 of the petition should be sold for the purpose of investing the proceeds of such sales in legal investments, but concluded as a matter of law that the court was without authority to authorize a sale by the Receiver for the purpose of investing the proceeds thereof in income producing legal investments, and declined to sign the order directing such sale.

The plaintiff appeals, assigning error.

*Walser & Brinkley, and Jordan, Wright & Henson for plaintiff.*
*No counsel contra.*

DENNY, J.  The question posed on this appeal is this: Does a judge of the superior court have the power and authority to order a Receiver of the defendant husband's property, located in North Carolina, to sell certain non-income producing real estate for the purpose of investing the proceeds derived therefrom in legal investments so as to produce an income sufficient to enable the Receiver to pay the expenses of the receivership and alimony payments awarded the plaintiff by the final judgment entered upon the jury's verdict that the defendant had abandoned his wife and child?

It appears from the record on this appeal that since the defendant abandoned his wife and child on 27 July 1957 he has not contributed anything to their support. Moreover, he has not paid anything pursuant to the orders heretofore entered in this cause in the court below. All that has been paid for the maintenance and repair of defendant's property, taxes, insurance, suit money, attorneys fees and alimony, has been paid by the Receiver.

It is well settled in this jurisdiction that a Receiver of the defendant husband's property in a case in which the wife has been awarded alimony may sell the husband's real estate to raise money to pay the alimony. *Bailey v. Bailey,* 127 N.C. 474, 37 S.E. 502; *White v. White,* 179 N.C. 592, 103 S.E. 216; *Wright v. Wright,* 216 N.C. 693, 6 S.E. 2d 555; *Pennington v. Fourth National Bank,* 243 U.S. 269, 61 L. Ed. 713.

It has likewise been held in this jurisdiction that a Receiver may collect the income from the husband's real property for the purpose of paying therefrom the alimony awarded the wife. *Gobble v. Orrell,* 163 N.C. 489, 79 S.E. 957; *Perkins v. Perkins,* 232 N.C. 91, 59 S.E. 2d 356.

The plaintiff herein has obtained a judgment for alimony without

divorce pursuant to the provisions of G.S. 50-16, and such statute, among other things, provides, " * * * it shall be lawful * * * to cause the husband to secure so much of his estate or to pay so much of his earnings, or both, as may be proper, according to his condition and circumstances, for the benefit of his said wife and the children of the marriage, having regard also to the separate estate of the wife * * *."

G.S. 1-505 (1957 Cumulative Supplement) provides: "The resident judge or the judge assigned to hold any of the courts in any judicial district of North Carolina shall have power and authority to order a sale of any property, real or personal, in the hands of a receiver duly and regularly appointed by the superior court of North Carolina, upon such terms as appear to be to the best interests of the creditors affected by said receivership * * *."

It is likewise said in 75 C.J.S., Receivers, section 221 page 856, et seq., "Since the usual power and duty of a receiver are to collect and take possession of the assets of the estate and hold them for disposition as the court may direct, * * * a sale by him is ordinarily improper, but the property, unless it is perishable, should be preserved intact for the benefit of the party ultimately entitled. There are, however, instances in which a sale of real or personal property of the estate is expedient and proper, and, pursuant to the general rule justifying the appointment of a receiver when necessary to preserve property from loss or destruction, * * * where the character of the property or surrounding circumstances are such as to render a sale necessary for the adequate protection of the rights of the parties, the court may direct and empower its receiver to sell such property, to the end that its value may be preserved, although the parties have not requested such sale, * * *. Thus, where property or a business cannot be administered by a receiver except at a loss, it is clearly within the power of the court to stop the loss by ordering the sale of such property or the assets of such business; * * *."

It is said in 27 C.J.S., Divorce, section 251, page 1024, "Alimony is not strictly a debt due to the wife, but rather a general duty of support made specific and measured by the court. It is generally held, however, that alimony decreed to a wife is as much a debt until the decree is recalled or modified, as any judgment for money is, that the wife is a judgment creditor and as such is entitled to avail herself of all the remedies given to judgment creditors, and that the decree operates to cause an indebtedness to arise in her favor as each installment of alimony falls due. So, it has been held that a decree for alimony is a 'debt,' * * * within the meaning of a statute authorizing the appointment of a receiver of the estate of an absentee and the application of his property to the discharge of such debts as may be

proved against him * * *." See also 17 Am. Jur., Divorce and Separation, section 784, page 806.

In *Walton v. Walton*, 178 N.C. 73, 100 S.E. 176, the holding of the court is succinctly stated in the third headnote as follows: "The wife's inchoate right to alimony makes her a creditor of her husband, enforceable by attachment, in case of his abandonment, which puts everyone on notice of her claim and her priority over other creditors of her husband." *Hagedorn v. Hagedorn*, 211 N.C. 175, 189 S.E. 507.

The superior court is a court of general jurisdiction, both in law and equity. Consequently, such court has inherent power over property in *custodia legis* and may order the sale of such property when such sale is necessary for the proper protection of the interests involved. *Commonwealth v. Nestler*, 312 Pa. 484, 167 A 354; *McClatchey v. Marquis*, 203 Iowa 76, 212 N.W. 374; 30 C.J.S., Equity, section 81, page 439.

In the case of *Blades v. Hood*, 203 N.C. 56, 164 S.E. 828, this Court said: "There are numerous cases in which courts of competent jurisdiction apply equitable remedies which have for their object the prevention, rather than the redress, of injuries. * * * The receiver is an officer of the court and is amenable to its instruction in the performance of his duties; and the custody of the receiver is the custody of the law. *Simmons v. Allison*, 118 N.C. 761; *Pelletier v. Lumber Co.*, 123 N.C. 596; *Greenleaf v. Land Co.*, 146 N.C. 505. Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require. *Skinner v. Maxwell*, 66 N.C. 45; *Lasley v. Scales*, 179 N.C. 578."

In light of the findings of the court below, and the authorities cited herein, we hold that a judge of the superior court does have the power to order the sale of the defendant's non-income producing real estate for the purpose of investing the proceeds derived from such sale in legal investments as provided in Article 6 of Chapter 53 of the General Statutes of North Carolina, so as to produce an income sufficient to enable the Receiver to pay the expenses of the receivership and alimony awarded the plaintiff wife. It would seem upon the facts found by the court below, that within the foreseeable future, the investment of the proceeds as contemplated by such a sale would protect the defendant from any further use of any portion of the corpus of his estate in order to carry out the orders of the court below and to meet the financial requirements of the receivership. Unless the defendant is given notice thereof, all orders of this character should be entered at a term of the superior court and not in chambers. The proceeds from such sale should be subjected to the doctrine of equitable

conversion and retain its character as realty, and it is so ordered in the event such sale is authorized and consummated.

Error and Remanded.