MYRTLE C. PIERSON *v.* THELMA PIERSON BARKLEY
ET AL

5-5996                                        484 S.W. 2d 872

Opinion delivered October 2, 1972

*Douglas Bradley,* for appellant.

*Frierson, Walker, Snellgrove & Laser,* for appellees.

GEORGE ROSE SMITH, Justice. Clyde C. Pierson, age 75, died on April 19, 1970, survived by his widow, the appellant, and by three sons and a daughter, the adult children of an earlier marriage. Mrs. Pierson, the widow, brought this suit to set aside (as a fraud upon her marital property rights) a transaction by which Pierson denuded himself of practically all his personal property a few months before his death, at a time when a divorce suit brought by Mrs. Pierson was pending. The appellees, individually and as executors of Pierson's will, are the son and daughter to whom he transferred the property. The trial court, at the close of the plaintiff's proof, sustained a demurrer to the evidence. Under the rule announced in *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W. 2d 225 (1950), and reaffirmed in dozens of later cases, the court's action was correct only if the plaintiff's evidence, viewed in its most favorable light, failed to make a prima facie case.

The record convinces us beyond a doubt that the demurrer to the evidence should have been overruled. The Piersons were married on October 4, 1968, and separated on July 28, 1969. Three days later Mrs. Pierson filed suit for a divorce, with a prayer for alimony and a property settlement. On October 15, 1969, with the suit pending, Pierson transferred to his daughter and to one of his sons, jointly, a $10,000 savings account and a $700 checking ac-

count. The transaction left Pierson with a homestead inventoried at a value of $7,500, a car worth $275, household goods and personal effects valued at $788, and certain lifetime Social Security benefits. The divorce case was still pending at Pierson's death in April, 1970.

The proof shows that the appellees—the recipients of the gift—have not in any respect treated the property as being exclusively their own. Quite the contrary. During the interval between the transfer of the property and their father's death they made no withdrawals from either account. Only four days after their father's death they voluntarily changed the $10,000 savings and loan account to a joint ownership among the four surviving children— an action which in substance gave effect to their father's will. The $700 bank account was used to pay debts of the estate.

The chancellor, in sustaining the demurrer to the evidence, seemingly took the view that since Pierson himself could not have revoked the gift to his two children, his widow stands in no better position. That reasoning is not sound. It is true that equity will not allow a fraudulent grantor to set aside his own conveyance. *McClure* v. *McClure*, 220 Ark. 312, 247 S.W. 2d 466 (1952). But that principle does not apply to the grantor's defrauded creditors, else no fraudulent conveyance could ever be avoided.

The case at bar, at its present stage, is governed by our cases holding that a husband's transfer of property to defeat his wife's rights in a pending divorce suit is voidable. *Hardy* v. *Hardy*, 228 Ark. 991, 311 S.W. 2d 761 (1958); *Dowell* v. *Dowell*, 207 Ark. 578, 182 S.W. 2d 344 (1944). No showing of insolvency on the part of the husband is essential, for the wife is entitled to recover her marital interest in the specific property. Nor can we sustain the appellees' contention that it was necessary, under our holding in *Wright* v. *Aaron*, 214 Ark. 254, 215 S.W. 2d 725 (1948), for the plaintiff to show that the appellees participated in their father's asserted fraud. That case involved a purchaser, whose good faith was in question, whereas these appellees are mere donees.

Reversed, the demurrer to the evidence to be overruled.